# EXHIBIT A to NOTICE OF REMOVAL

The information available on Case.net is provided as a service and is not considered an official court record.


Case.net:2622-CC13519 - ANTHONY LIGORI V FEDERAL RESERVE BANK OF ST. LOUIS (E-CASE) - Docket Entries

| **Respond to Selected Documents |** **Sort by date:** Descending Ascending **Display options:** All Entries

**11/02/2026**

**Agent Served**

Document ID - 26-SMCC-17624; Served To - FEDERAL RESERVE BANK OF ST. LOUIS; Served Date - 10/30/2026; Served Time - 14:10:43; Service Type - SD; Reason Description - SERV; Service Text -

**Notice of Service**

26-SMCC-17624; Electronic Filing Certificate of Service.

**10/22/2026**

**Alias Summons Issued**

Document ID: 26-SMCC-17624, for FEDERAL RESERVE BANK OF ST. LOUIS

**10/21/2026**

**Alias Summons Requested**

Motion for Issuance of Alias Summons.

**Filed By:** MEREDITH SHAFFER BERWICK

**On Behalf Of:** ANTHONY LIGORI

**10/20/2026**

**Jury Trial Scheduled**

**Scheduled For:** 08/02/2027; 9:00 AM; CHRISTOPHER EDWARD MCGRAUGH; City of St. Louis

**09/17/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-16752, for FEDERAL RESERVE BANK OF ST. LOUIS

**Filing Info Sheet eFiling**

**Filed By:** MEREDITH SHAFFER BERWICK

**CRIFS/Unredacted Document**

CRIFS Petition in associated to Circuit Court filed on 09/17/2026.

**Filed By:** MEREDITH SHAFFER BERWICK

**On Behalf Of:** ANTHONY LIGORI

**Associated Entries: 09/17/2026 -**

**Pet Filed in Circuit Ct**

+

**Pet Filed in Circuit Ct**

Petition; Exhibit 1; Exhibit 2; Exhibit 3.

**Filed By:** MEREDITH SHAFFER BERWICK

**On Behalf Of:** ANTHONY LIGORI

**Associated Entries: 09/17/2026 - CRIFS/Unredacted Document** +

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

**IN THE CIRCUIT COURT OF ST. LOUIS CITY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **ANTHONY LIGORI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Cause No.:** |
| | ) | |
| **FEDERAL RESERVE BANK OF ST. LOUIS,** | ) | **Div.:** |
| Serve: | ) | |
| James Lang | ) | |
| Federal Reserve Bank of St. Louis | ) | |
| 1 Federal Reserve Bank Plaza | ) | |
| Saint Louis, MO 63102 | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

**PETITION FOR DAMAGES**

COMES NOW Plaintiff Anthony Ligori ("***Ligori***" or "***Plaintiff***"), by and through undersigned counsel, and hereby submits his Petition for Damages against Federal Reserve Bank of St. Louis ("***FRB STL***" or "***Defendant***"), and in support thereof, states as follows:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Ligori is an individual residing in the City of Saint Louis, State of Missouri.

2. At all times relevant to the actions alleged herein, Plaintiff was employed by the Federal Reserve Bank of St. Louis, which is part of the United States Federal Reserve System.

3. The United States Federal Reserve System is the central bank of the United States.

4. The United States Federal Reserve System is composed of a Board of Governors, twelve (12) regional Federal Reserve Banks and the Federal Open Market Committee.

5. The Reserve Banks, including FRB STL, combine both public and private elements in their makeup and organization.

6. Defendant is an employer as defined by the Missouri Human Rights Act, R.S.Mo. § 213.010(8).

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

7. Defendant is an employer as defined by the Americans with Disabilities Act, 42 U.S.C. 12111(5).

8. Plaintiff was first injured by Defendant in the City of Saint Louis, State of Missouri.

9. Pursuant to R.S.Mo. § 508.010, jurisdiction and venue are therefore proper in the City of Saint Louis.

10. On April 25, 2025, Plaintiff timely filed his Charge of Discrimination with the Missouri Commission on Human Rights ("***MCHR***"), and the Equal Employment Opportunity Commission ("***EEOC***"), alleging that he was subjected to discrimination, hostile work environment, and retaliation. A true and correct copy of this charge is attached hereto as **Exhibit 1** and incorporated herein by reference

11. The MCHR designated Plaintiff's charge as Charge Number FE-04/25-40696.

12. The EEOC designated Plaintiff's charge as Charge Number 560-2025-02745.

13. On June 24, 2026, the MCHR issued a Notice of Right to Sue for Charge Number FE-04/25-40696. A copy of said Notice is attached hereto as **Exhibit 2** and incorporated herein by reference.

14. On June 24, 2026, the EEOC issued a Notice of Right to Sue for Charge Number 560-2025-02745. A copy of said Notice is attached hereto as **Exhibit 3** and incorporated herein by reference.

15. Plaintiff invokes this Court's concurrent jurisdiction to hear civil federal civil rights claims under American with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Civil Rights Act of 1866, 42 U.S.C. §1981

16. Plaintiff has satisfied and exhausted all administrative and judicial prerequisites prior to the filing of this lawsuit.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

## STATEMENT OF FACTS

17. On or about September 7, 2021, Plaintiff began his employment with FRB STL, as Manager of the Facilities Project Management Team.

18. Plaintiff's job duties included overseeing construction project management across all buildings owned by FRB STL.

19. Plaintiff performed most of his work duties in the City of St. Louis.

20. At all relevant times, Plaintiff reported to his immediate supervisor, [redacted], an Assistant Vice President of the Federal Reserve.

21. During his employment, Plaintiff performed his job duties in a satisfactory manner and met Defendant's legitimate job expectations.

22. Plaintiff consistently received "meets expectations" ratings in his performance reviews and received bonuses at the highest range of the allowances each year.

23. In the summer of 2023, Plaintiff's department was relocated to the basement, also referred to as the "Lower Level," in the FRB STL building in the City of St. Louis, Missouri.

24. Shortly after the relocation, Plaintiff began experiencing respiratory impairment, sinus complications, dizziness, lethargy, chronic headaches, brain fog and panic attacks as a result of mold conditions in the Lower Level.

25. These conditions substantially impacted Plaintiff's major life activities including respiratory function, cardiovascular function, thinking, breathing, and working.

26. Plaintiff's condition constitutes a disability under the MHRA.

27. Plaintiff's condition constitutes a disability under the ADA.

28. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

29. A third-party company conducted testing which confirmed and documented mold in the Lower Level where Plaintiff worked.

30. Plaintiff's mold-related medical impairments were documented by his physician.

31. In April 2024, Plaintiff went on paternity leave for approximately six weeks.

32. While away from the office, Plaintiff's symptoms fully resolved.

33. Upon returning to work, Plaintiff's symptoms returned.

34. On or about May 30, 2024, Plaintiff informed [redacted] of his mold-related symptoms and requested to move out of the Lower Level as a reasonable accommodation.

35. On or about June 7, 2024, [redacted] informed Plaintiff that he needed to submit a formal accommodation request.

36. On or about June 10, 2024, Plaintiff formally requested the accommodation of being moved to a space outside the Lower Level pending complete remediation of the mold.

37. Despite follow-up by Plaintiff, Defendant did not provide Plaintiff its required FMLA and disability forms until on or about July 8, 2024.

38. On or about July 10, 2024, a large water leak was discovered under the flooring in the Lower Level.

39. Fans were placed on the floor, causing mold spores to become airborne throughout the Lower Level.

40. This exacerbated Plaintiff's medical conditions, including his respiratory issues, and Plaintiff suffered a severe allergic reaction.

41. That same day, Plaintiff notified [redacted] and Human Resources by email that he would not be able to continue working in the Lower Level due to the unsafe air quality and mold conditions.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

42. On or about July 17, 2024, Plaintiff's physician sent documentation to the Company recommending that Plaintiff be moved to a different workspace away from the mold and water leak.

43. In August 2024, Defendant finally provided Plaintiff with a workspace outside of the Lower Level.

44. Shortly after Plaintiff was given this accommodation, Defendant began to treat him adversely.

45. [redacted] excluded Plaintiff from meetings he had previously attended.

46. [redacted] canceled numerous one-on-one meetings with Plaintiff.

47. The meetings that did take place between [redacted] and Plaintiff were not productive and were not primarily related to his work or performance.

48. Plaintiff was actively seeking feedback to improve his work performance and opportunities for promotion.

49. Plaintiff reached out to management to ask for feedback on his performance thus far and what he could to improve and receive a promotion.

50. As a result of his feedback requests, a monthly "development meeting" was scheduled between Plaintiff and [redacted] The meetings were to begin in January 2025.

51. [redacted] canceled every single one of these meetings, and Plaintiff was never allotted time for feedback on his performance.

52. [redacted] began communicating directly with team members Plaintiff supervised, bypassing Plaintiff entirely, which she had not done prior to his accommodation request.

53. [redacted] began holding meetings with Plaintiff's team members.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

54. Plaintiff was not informed of these meetings and was reprimanded for not being aware of the content of those discussions.

55. In or about late September or early October 2024, Plaintiff scheduled a site visit for his team.

56. [redacted] directed Plaintiff to cancel the site visit, which Plaintiff did.

57. On information and belief, [redacted] rescheduled the site visit and invited Plaintiff's entire team while excluding Plaintiff.

58. In late September or early October 2024, a colleague named [redacted] ("[redacted] called Plaintiff after work hours and told him he did not know what Plaintiff's problem was, based on representations [redacted] made to [redacted] that Plaintiff had been disparaging [redacted] work.

59. [redacted] representations about Plaintiff to [redacted] were false.

60. At his year-end review for 2024, Plaintiff received marks of "meets expectations" and was granted a raise and a bonus at the highest range of the "meets expectations" allowances.

61. In January 2025, Plaintiff asked about a promotion from the M4 to the M5 pay grade.

62. [redacted] told Plaintiff that the promotion had not been given due to his "thing," referring to Plaintiff's accommodation requests and/or disability.

63. In February 2025, Plaintiff suffered an anxiety attack in [redacted] office during a meeting.

64. Plaintiff required two mental health days to recover.

65. In or about February 2025, while Plaintiff was present, colleagues on the Facilities Management Team openly mocked and disparaged another employee who had submitted an indoor

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

air quality complaint and sought an accommodation to work from home, suggesting the complaint must be fabricated.

66. In early March 2025, additional mold was discovered in the Lower Level.

67. On March 24, 2025, Defendant informed Plaintiff that he was being terminated.

68. Defendant's stated reason for termination was unsatisfactory performance.

69. Plaintiff had not been placed on a Performance Improvement Plan prior to termination and had received very minimal negative performance feedback in the months preceding his discharge.

70. Plaintiff was subject to a workplace accommodation at the time of his termination.

## COUNT I: DISABILITY DISCRIMINATION
## In Violation of the MHRA

71. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth and restated herein.

72. Plaintiff's medical conditions substantially impacted one or more of Plaintiff's major life activities, including respiratory function, cardiovascular function, thinking, breathing, and working, and these conditions constitute a disability within the meaning of MHRA, R.S.Mo. § 213.010(5).

73. Plaintiff had an actual and/or perceived disability, including but not limited to his allergy to mold and related complications.

74. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

75. Defendant took adverse employment actions against Plaintiff, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, denying Plaintiff promotion, and terminating Plaintiff's employment.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

76. Plaintiff's actual and/or perceived disability was a motivating factor in Defendant's adverse employment actions taken against Plaintiff.

77. Defendant took the adverse employment actions against Plaintiff because of Plaintiff's disability, in violation of the MHRA.

78. Defendant also subjected Plaintiff to unwelcome harassment based on Plaintiff's disabled status under the law, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, providing false information about Plaintiff to coworkers, denying Plaintiff promotion, and terminating Plaintiff's employment.

79. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

80. Defendant subjected Plaintiff to a hostile work environment based on Plaintiff's disability.

81. Defendant knew or should have known of the harassment and failed to implement prompt and effective corrective action.

82. Defendant's actions as described herein constitute disability discrimination in violation of the MHRA, R.S.Mo § 213.055.

83. Defendant's conduct was intentional, willful, wanton, and malicious, and showed a reckless disregard for Plaintiff's rights under the MHRA. Defendant's conduct warrants punitive damages.

84. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including lost wages and benefits, emotional distress and mental anguish.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

85. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other expenses and losses in connection with this matter.

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff back pay, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre and post-judgment interest, front pay and other appropriate equitable relief, and attorneys' fees and costs, all in an amount over $25,000.00, and for such additional relief as may be just and proper under the circumstances. Plaintiff demands a jury trial on all counts.

## COUNT II: DISABILITY DISCRIMINATION
## In Violation of the ADA

86. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth and restated herein.

87. Plaintiff's medical conditions substantially impacted one or more of Plaintiff's major life activities, including respiratory function, cardiovascular function, thinking, breathing, and working, and these conditions constitute a disability within the meaning of ADA.

88. Plaintiff had an actual and/or perceived disability, including but not limited to his allergy to mold and related complications.

89. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

90. Defendant took adverse employment actions against Plaintiff, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, denying Plaintiff promotion, and terminating Plaintiff's employment.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

91. Plaintiff's actual and/or perceived disability was a motivating factor in Defendant's adverse employment actions.

92. Defendant took the adverse employment actions against Plaintiff because of Plaintiff's disability, in violation of the ADA.

93. Defendant also subjected Plaintiff to unwelcome harassment based on Plaintiff's disabled status under the law, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, providing false information about Plaintiff to coworkers, denying Plaintiff promotion, and terminating Plaintiff's employment.

94. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

95. Defendant subjected Plaintiff to a hostile work environment based on Plaintiff's disability.

96. Defendant knew or should have known of the harassment and failed to implement prompt and effective corrective action.

97. Defendant's actions as described herein constitute disability discrimination in violation of the ADA, 42 U.S.C. § 12112.

98. Plaintiff's actual and/or perceived disability was a motivating factor in Defendant's adverse employment actions taken against Plaintiff.

99. Defendant's conduct was intentional, willful, wanton, and malicious, and showed a reckless disregard for Plaintiff's rights under the ADA. Defendant's conduct warrants punitive damages.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

100. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including lost wages and benefits, emotional distress and mental anguish.

101. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other expenses and losses in connection with this matter.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff back pay, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre and post-judgment interest, front pay and other appropriate equitable relief, and attorneys' fees and costs, all in an amount over $25,000.00, and for such additional relief as may be just and proper under the circumstances. Plaintiff demands a jury trial on all counts

## COUNT III: RETALIATION
## In Violation of the ADA

102. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth and restated herein.

103. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

104. By requesting accommodation for his disability, Plaintiff engaged in activity protected under the ADA.

105. Defendant subjected Plaintiff to unwelcome harassment because of his protected activity under the ADA.

106. In retaliation for his protected activity, Defendant took actions against Plaintiff, including but not limited to, excluding Plaintiff from meetings, bypassing him in his supervisory role,

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

providing false information about him to coworkers, denying him a promotion, and terminating his employment.

107. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

108. Defendant knew or should have known of the harassment and failed to implement prompt and effective corrective action.

109. Defendant subjected Plaintiff to a hostile work environment in retaliation for Plaintiff's protected activity, in violation of the ADA, 42 U.S.C. § 12203.

110. Defendant's conduct was intentional, willful, wanton, and malicious, and showed a reckless disregard for Plaintiff's rights under the ADA. Defendant's conduct warrants punitive damages.

111. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer lost wages and benefits, emotional distress, mental anguish, humiliation, and damage to his professional reputation.

112. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including lost wages and benefits, emotional distress and mental anguish.

113. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other expenses and losses in connection with this matter.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant for back pay, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre and post-judgment interest, front pay and other appropriate equitable relief, attorneys' fees and costs, all in an amount over $25,000.00, and for

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

such additional relief as may be just and proper under the circumstances. Plaintiff demands a jury trial on all counts.

Respectfully submitted,

*<u>/s/ Meredith S. Berwick</u>*
Meredith S. Berwick, MO #64389
Krystal K. Weigl, MO #69874
WEIGL JACKSON, LLC
10805 Sunset Office Drive Suite 210
St. Louis, MO 63127
Meredith@WeiglLaw.com
Krystal@WeiglLaw.com
(314) 707-4626
*Attorney for Plaintiffs*

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

# Exhibit 1

Received by EEOC 04/25/2025

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: MCHR + EEOC | Agency(ies) Charge No(s): 560-2025-02745 |
|---|---|---|
| MCHR<br>*State or local Agency, if any* | and EEOC | |
| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev., etc.)*<br>Mr. Anthony Ligori | Home Phone<br>[redacted] | Year of Birth<br>[redacted] |
| Street Address, City State and ZIP Code<br>[redacted] | | |
| Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)* | | |
| Name<br>Federal Reserve Bank of St. Louis | No. Employees, Members<br>500+ | Phone No.<br>(314) 444-8444 |
| Street Address, City State and ZIP Code<br>Broadway and Locust, 1 Federal Reserve Bank Plaza, St. Louis, MO 63102 | | |
| Name | No. Employees, Members | Phone No. |
| Street Address, City, State and ZIP Code | | |
| DISCRIMINATION BASED ON<br>Disability and Retaliation | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest: May 30, 2024 | Latest: March 24, 2025 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See attached narrative.

STATE OF MISSOURI · My Commission Expires Oct. 3, 2027 · NOTARY SEAL · NOTARY PUBLIC · OLIVIA WEIGL · ST. LOUIS CITY · Commission # 23392178

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>4-25-25 (*Date*) [signature] (*Charging Party Signature*) | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT [signature]<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* [signature] 4/25/25 |

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

**ANTHONY LIGORI**

**v.**

**FEDERAL RESERVE BANK OF ST. LOUIS**

## CHARGE OF DISCRIMINATION BASED ON DISABILITY AND RETALIATION

I, Anthony Ligori, am a 42 year-old male. I reside in St. Louis City, Missouri. I contend that my employer, Federal Reserve Bank of St. Louis. ("***Federal Reserve***" or "***Company***"), as well as its agents and employees, discriminated and retaliated against me based on my disability and my request for an accommodation for the same.

I began working for the Federal Reserve as a Manager of the Facility Project Management Team on September 7, 2021. The Company employs over 500 people, with at least 50 employees working in the office. The Company is an "employer" as defined by the Missouri Human Rights Act and the Americans with Disabilities Act (ADA). At all relevant times I reported to my immediate supervisor, Andrea Donsbach ("***Donsbach***"). I was compensated $132,400 a year, plus various bonuses throughout the year and full benefits, including medical insurance, employer retirement plan, company 401(k) contributions and PTO. My main job duties included overseeing the construction project management across all buildings owned by the Federal Reserve Bank of St. Louis. By all accounts, I was a good employee, I even received the high tier salary bonus based on my end of year review for 2024. During my employment, I performed my job to the best of my ability and met the legitimate job expectations of the Company.

Beginning in the summer of 2023, I was subjected to discrimination and a Hostile Work Environment by my coworkers. I was harassed based on my disability. Despite many complaints to superiors, the Company failed to address the issue of discrimination.

In the summer of 2023, my department was relocated from our work area into the basement of our building. I soon began experiencing respiratory impairment, sinus complications, dizziness, lethargy, and chronic headaches, that would constitute a disability or impairment under the ADA. Additionally, during my employment, I began to suffer from panic attacks. (Collectively, "disabilities"). These health issues, my disabilities, were documented by my doctor. Shortly after, mold was discovered throughout the basement.

In April of 2024 I went on paternity leave and consequently was away from the office for a period of six weeks. My symptoms resolved. When I returned to work the symptoms almost immediately returned. On May 30, 2024, I told Donsbach about my symptoms from the mold and requested a seating change out of the basement. This was a reasonable accommodation that would not cause undue hardship to the Company. Donsbach informed me that she would talk to her superiors. Nothing happened until I again asked to move out of the basement. On June 7, 2024 Donbach told me I needed to put in a formal accommodation request to be moved out of

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

the basement and away from the mold. On June 10, 2024 I put in a formal request to be moved until there was a complete remediation of the mold. Despite my continuous follow-up, company required FMLA Disability Forms were not provided to me until July 8th.

On July 10, 2024 a large water leak was discovered under the raised access flooring in the basement. The floor was covered with fans to "dry up" the water, but ended up making the mold spores become airborne. This caused me to have a severe allergic reaction and triggered my respiratory complications. On July 17, 2024 my doctor sent a letter to the Company suggesting I be moved to a different office space where there was no water leak.

It was not until August that the Company gave me a space that was not in the basement. Shortly after this change in seating arrangement, I was left out of meetings I had previously been a part of. Donsbach canceled several of our 1 on 1 meetings. The meetings that took place were not productive nor primarily related to my work or performance. During one of our meetings I stated that the basement was problematic because of the mold. She told me that she "just takes Zyrtec" for her allergies and that I should try the same. Donsbach started going directly to the team members I managed with questions and concerns instead of going through me - something she had not done before my accommodation request. I had scheduled a site visit for my team and Donsbach told me to cancel it. I later found out that Donsbach had rescheduled the site visit and invited my entire team.

I had co-workers come to me with animosity based on things they had heard from Donsbach. One specific instance involved a colleague named Patrick. One day in late September or early October of 2024, Patrick called me after work hours and stated, "I don't know what your problem is" and went on to explain that Donsbach told Patrick that I was disparaging Patrick's work and "talking trash" about him. The comments Donsbach has circulated about me were false. Patrick's work involved remedying the water leak. The conversation I had with Donsbach, related to Patrick, was one where I told Donsbach that the fan placed downstairs to clear the water was insufficient. Instead of acknowledging or hearing my health and disability related concerns, Donsbach began telling my coworkers that I was disparaging their work.

In October or November of 2024, Donsbach stated that other team members complained that I was allowed to sit on a different floor when they had to remain in the lower level. She said there were a few people that complained and mentioned one coworker, Rebecca Lane, by name.

At my year-end review for 2024 I received all marks of "meets expectations" and I was granted a raise and a bonus at the highest range of meets expectations allowances. I received a handwritten card from Donsbach thanking me "for everything [I] contributed over the past year." Further "[My] hard work and dedication have been truly appreciated". Lastly, "I'm excited about what lies ahead and am grateful to have you on the team as we tackle this year's new opportunities together".

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

In January of 2025 I asked why I had not been given the promotion from M4 to M5. Donsbach told me that it was due to my "thing" referring to my accommodation and/or disability. When talking about seating availability within the building, due to a possible full return to 5 days per week in the building for all staff, James said people are just going to have to sit in the Lower Level in spite of the water and mold. He looked directly at me when he said it.

In February of 2025, I suffered an anxiety attack in Donbach's office after being scolded by her. I had to take two mental health days to recover and started seeking the help of a counselor. The facilities management team received an indoor air quality (IAQ) complaint from someone sitting on the 5th floor. The facilities management team openly discussed their investigation efforts of the space while I was in the room. The team all agreed that this person must be making this up so they can gain an accommodation to permanently work from home. The comments were disparaging and mocking in nature.

In early March of 2025, more mold was discovered in the basement.

On March 24, 2025, the Company informed me that I was being terminated.

In summary, I was an individual with a disability within the meaning of the ADA, who was subjected to discrimination with respect to the terms, conditions, and/or privileges of my employment because of my disability, record of disability, and/or perceived disability in violation of the ADA. My disability inhibits a major life activity, breathing, and I am a member of the class of people intended to be protected by the ADA. I was qualified to perform the essential functions of the job.

I exercised my rights under the ADA, requested an accommodation, and this was a motivating factor in the Company's decision to terminate my employment. The Federal Reserve Bank of St. Louis' conduct is in violation of the ADA. Requesting an accommodation is a protected activity under the ADA. The Company retaliated against me because I sought to exercise my rights afforded to me under the ADA. The Company's conduct was in violation of the ADA. My protected activity was a motivating factor in the Company's decision to terminate my employment. The Company's conduct was outrageous and showed complete indifference to or conscious disregard for my rights.

As a direct result of the Company's conduct, I have suffered damages, which include loss of wages and benefits, past and present, mental anguish, emotional distress, pain and suffering, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses, all of continuing and permanent nature.

Based upon the details described above, I contend that the Federal Reserve Bank of St. Louis., as well as its agents and employees engaged in acts of discrimination and retaliation under the ADA.

[signature] 4-25-25

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

# Exhibit 2

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS

# MISSOURI COMMISSION ON HUMAN RIGHTS

MIKE KEHOE
GOVERNOR

ANNA S. HUI
DEPARTMENT DIRECTOR

CHRISTOPHER SLINKARD
COMMISSION CHAIR

SHANNON THOMPSON
ACTING EXECUTIVE DIRECTOR

June 24, 2026

Anthony Ligori
[redacted]

**NOTICE OF RIGHT TO SUE**

RE: Ligori v. Federal Reserve Bank of St. Louis, FE-04/25-40696; 560-2025-02745

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue from MCHR and/or the Equal Employment Opportunity Commission (EEOC) with whom this matter was dual filed.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri. Any such petition must be filed in the Circuit Court of Cole County.

(CONTINUED ON NEXT PAGE)

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

RE: Ligori v. Federal Reserve Bank of St. Louis, FE-04/25-40696; 560-2025-02745

Respectfully,

*Shannon Thompson*

Shannon Thompson
Acting Executive Director

CC:
Federal Reserve Bank of St. Louis
One Federal Reserve Bank Plaza
Broadway and Locust
Saint Louis, MO 63102
*Via Respondent Attorney Email*

Amy Oslica Dougherty
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
Adougherty@thompsoncoburn.com

Krystal K. Weigl
Managing Partner, Weigl Law, LLC
10805 Sunset Office Drive
Suite 210
St. Louis, MO 63127
Krystal@weigllaw.com

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

# Exhibit 3

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/24/2026

**To:** Anthony Ligori
[redacted]

Charge No: 560-2025-02745

EEOC Representative and email: Jason Wilson
Equal Opportunity Investigator
jason.wilson@eeoc.gov

---

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 560-2025-02745.

On behalf of the Commission,

Digitally Signed By:David Davis
06/24/2026

David Davis
District Director

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM

**Cc:**
James Lang
Federal Reserve Bank of St. Louis
1421 Dr. Martin Luther King Drive
Saint Louis, MO 63106

Jennifer Haynes
P.O. Box 442
Saint Louis, MO 63166

Amy Sullivan
P.O. Box 442
Saint Louis, MO 63166

Amy Dougherty
Thompson Coburn LLP
One US Bank Plaza
Saint Louis, MO 63101

Krystal Weigl
Weigl Law, LLC
10805 Sunset Office Dr. Suit 210
Saint Louis, MO 63127

Please retain this Notice for your records.

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM



# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM



FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 560-2025-02745 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 560-2025-02745 to the District Director at David Davis, 1222 Spruce St Rm 8 100, St Louis, MO 63103.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Electronically Filed - City of St. Louis - September 17, 2026 - 04:42 PM



**are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# Summons in Civil Case

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>CHRISTOPHER EDWARD MCGRAUGH | **Case Number: 2622-CC13519** | |
| Plaintiff/Petitioner:<br>ANTHONY LIGORI<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MEREDITH SHAFFER BERWICK<br>5017 WASHINGTON PLACE 3RD FL<br>ST LOUIS, MO 63108 | |
| Defendant/Respondent:<br>FEDERAL RESERVE BANK OF ST. LOUIS | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | (Date File Stamp for Return) |

**The State of Missouri to:** **FEDERAL RESERVE BANK OF ST. LOUIS**
**Alias:**
**1 FEDERAL RESERVE BANK PLAZA**
**ST. LOUIS, MO 63102**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***CITY OF ST LOUIS***

9/17/2026
Date

[signature]
Clerk

**Further Information:**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ____________________________________________________________.

Served at ____________________________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on __________________ (date)

at ______________ (time).

______________________________ ______________________________

Printed Name of Officer or Server — Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: __________________ ______________________________

Date — Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - CITY OF ST. LOUIS - October 21, 2026 - 11:43 AM

**IN THE CIRCUIT COURT OF THE CITY OF SAINT LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **ANTHONY LIGORI** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Cause No.: 2622-CC13519** |
| **v.** | ) | |
| | ) | **Division:** |
| **FEDERAL RESERVE** | ) | |
| **BANK OF ST. LOUIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION FOR ISSUANCE OF ALIAS SUMMONS**

COMES NOW Plaintiff and requests that this Court issue an alias summons for Defendant Federal Reserve Bank of St. Louis.

WHEREFORE, Plaintiff prays this Court issue a summons for Defendant Federal Reserve Bank of St. Louis.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith S. Berwick, MO #64389
Krystal K. Weigl, MO #69874
WEIGL JACKSON, LLC
10805 Sunset Office Drive Suite 210
St. Louis, MO 63127
Meredith@WeiglLaw.com
Krystal@WeiglLaw.com
(314) 707-4626
*Attorneys for Plaintiff*

# Summons in Civil Case

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>CHRISTOPHER EDWARD MCGRAUGH | **Case Number: 2622-CC13519** | |
| Plaintiff/Petitioner:<br>ANTHONY LIGORI<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MEREDITH SHAFFER BERWICK<br>5017 WASHINGTON PLACE 3RD FL<br>ST LOUIS, MO 63108 | |
| Defendant/Respondent:<br>FEDERAL RESERVE BANK OF ST. LOUIS | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | (Date File Stamp for Return) |

**The State of Missouri to: FEDERAL RESERVE BANK OF ST. LOUIS**
**Alias:**
**1 FEDERAL RESERVE BANK PLAZA**
**ST. LOUIS, MO 63102**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***CITY OF ST LOUIS***

10/22/2026
Date

Clerk

**Further Information:**


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________________________.

Served at ______________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ________________ (date)

at ____________ (time).

______________________________ ______________________________

Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ________________ ______________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# Summons in Civil Case

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>CHRISTOPHER EDWARD MCGRAUGH | **Case Number: 2622-CC13519** | |
| Plaintiff/Petitioner:<br>ANTHONY LIGORI<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MEREDITH SHAFFER BERWICK<br>5017 WASHINGTON PLACE 3RD FL<br>ST LOUIS, MO 63108 | |
| Defendant/Respondent:<br>FEDERAL RESERVE BANK OF ST. LOUIS | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | (Date File Stamp for Return) |

**The State of Missouri to:** **FEDERAL RESERVE BANK OF ST. LOUIS**
**Alias:**
**1 FEDERAL RESERVE BANK PLAZA**
**ST. LOUIS, MO 63102**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***CITY OF ST LOUIS***

10/22/2026
Date

Thomas Kloeppinger
Clerk

**Further Information:**


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________________________.

Served at ______________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

______________________________ Printed Name of Officer or Server

______________________________ Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ Date ______________________________ Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# Confidential Redacted Information Filing Sheet

| | |
|---|---|
| Party Name: Anthony Ligori | **Case Number:** |
| Address: | Case Type: |
| | Style of Case: Anthony Ligori v. Federal Reserve Bank |
| Email Address: | ☑ The unredacted document is attached to this filing sheet in place of listing the redacted information identifiers below. |
| Filing Date: 9/17/2026 | |
| Document Filed: Petition and Exhibits | |

(Date File Stamp)

**REDACTED INFORMATION:**

| Redacted Information Identifier | Redacted Information |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Submitted by: Meredith Berwick Bar ID (required if attorney): 64389

Address: 10805 Sunset Office Dr.

City: St. Louis State: MO Zip: 63127

Phone: 314-313-0067 Email Address: meredith@weigllaw.com

**IN THE CIRCUIT COURT OF ST. LOUIS CITY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **ANTHONY LIGORI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Cause No.:** |
| | ) | |
| **FEDERAL RESERVE BANK OF ST. LOUIS,** | ) | **Div.:** |
| Serve: | ) | |
| James Lang | ) | |
| Federal Reserve Bank of St. Louis | ) | |
| 1 Federal Reserve Bank Plaza | ) | |
| Saint Louis, MO 63102 | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

**PETITION FOR DAMAGES**

COMES NOW Plaintiff Anthony Ligori (“***Ligori***” or “***Plaintiff***”), by and through undersigned counsel, and hereby submits his Petition for Damages against Federal Reserve Bank of St. Louis (“***FRB STL***” or “***Defendant***”), and in support thereof, states as follows:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Ligori is an individual residing in the City of Saint Louis, State of Missouri.

2. At all times relevant to the actions alleged herein, Plaintiff was employed by the Federal Reserve Bank of St. Louis, which is part of the United States Federal Reserve System.

3. The United States Federal Reserve System is the central bank of the United States.

4. The United States Federal Reserve System is composed of a Board of Governors, twelve (12) regional Federal Reserve Banks and the Federal Open Market Committee.

5. The Reserve Banks, including FRB STL, combine both public and private elements in their makeup and organization.

6. Defendant is an employer as defined by the Missouri Human Rights Act, R.S.Mo. § 213.010(8).

7. Defendant is an employer as defined by the Americans with Disabilities Act, 42 U.S.C. 12111(5).

8. Plaintiff was first injured by Defendant in the City of Saint Louis, State of Missouri.

9. Pursuant to R.S.Mo. § 508.010, jurisdiction and venue are therefore proper in the City of Saint Louis.

10. On April 25, 2025, Plaintiff timely filed his Charge of Discrimination with the Missouri Commission on Human Rights ("***MCHR***"), and the Equal Employment Opportunity Commission ("***EEOC***"), alleging that he was subjected to discrimination, hostile work environment, and retaliation. A true and correct copy of this charge is attached hereto as **Exhibit 1** and incorporated herein by reference

11. The MCHR designated Plaintiff's charge as Charge Number FE-04/25-40696.

12. The EEOC designated Plaintiff's charge as Charge Number 560-2025-02745.

13. On June 24, 2026, the MCHR issued a Notice of Right to Sue for Charge Number FE-04/25-40696. A copy of said Notice is attached hereto as **Exhibit 2** and incorporated herein by reference.

14. On June 24, 2026, the EEOC issued a Notice of Right to Sue for Charge Number 560-2025-02745. A copy of said Notice is attached hereto as **Exhibit 3** and incorporated herein by reference.

15. Plaintiff invokes this Court's concurrent jurisdiction to hear civil federal civil rights claims under American with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Civil Rights Act of 1866, 42 U.S.C. §1981

16. Plaintiff has satisfied and exhausted all administrative and judicial prerequisites prior to the filing of this lawsuit.

## STATEMENT OF FACTS

17. On or about September 7, 2021, Plaintiff began his employment with FRB STL, as Manager of the Facilities Project Management Team.

18. Plaintiff's job duties included overseeing construction project management across all buildings owned by FRB STL.

19. Plaintiff performed most of his work duties in the City of St. Louis.

20. At all relevant times, Plaintiff reported to his immediate supervisor, Andrea Donsbach ("***Donsbach***"), an Assistant Vice President of the Federal Reserve.

21. During his employment, Plaintiff performed his job duties in a satisfactory manner and met Defendant's legitimate job expectations.

22. Plaintiff consistently received "meets expectations" ratings in his performance reviews and received bonuses at the highest range of the allowances each year.

23. In the summer of 2023, Plaintiff's department was relocated to the basement, also referred to as the "Lower Level," in the FRB STL building in the City of St. Louis, Missouri.

24. Shortly after the relocation, Plaintiff began experiencing respiratory impairment, sinus complications, dizziness, lethargy, chronic headaches, brain fog and panic attacks as a result of mold conditions in the Lower Level.

25. These conditions substantially impacted Plaintiff's major life activities including respiratory function, cardiovascular function, thinking, breathing, and working.

26. Plaintiff's condition constitutes a disability under the MHRA.

27. Plaintiff's condition constitutes a disability under the ADA.

28. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

29. A third-party company conducted testing which confirmed and documented mold in the Lower Level where Plaintiff worked.

30. Plaintiff's mold-related medical impairments were documented by his physician.

31. In April 2024, Plaintiff went on paternity leave for approximately six weeks.

32. While away from the office, Plaintiff's symptoms fully resolved.

33. Upon returning to work, Plaintiff's symptoms returned.

34. On or about May 30, 2024, Plaintiff informed Donsbach of his mold-related symptoms and requested to move out of the Lower Level as a reasonable accommodation.

35. On or about June 7, 2024, Donsbach informed Plaintiff that he needed to submit a formal accommodation request.

36. On or about June 10, 2024, Plaintiff formally requested the accommodation of being moved to a space outside the Lower Level pending complete remediation of the mold.

37. Despite follow-up by Plaintiff, Defendant did not provide Plaintiff its required FMLA and disability forms until on or about July 8, 2024.

38. On or about July 10, 2024, a large water leak was discovered under the flooring in the Lower Level.

39. Fans were placed on the floor, causing mold spores to become airborne throughout the Lower Level.

40. This exacerbated Plaintiff's medical conditions, including his respiratory issues, and Plaintiff suffered a severe allergic reaction.

41. That same day, Plaintiff notified Donsbach and Human Resources by email that he would not be able to continue working in the Lower Level due to the unsafe air quality and mold conditions.

42. On or about July 17, 2024, Plaintiff's physician sent documentation to the Company recommending that Plaintiff be moved to a different workspace away from the mold and water leak.

43. In August 2024, Defendant finally provided Plaintiff with a workspace outside of the Lower Level.

44. Shortly after Plaintiff was given this accommodation, Defendant began to treat him adversely.

45. Donsbach excluded Plaintiff from meetings he had previously attended.

46. Donsbach canceled numerous one-on-one meetings with Plaintiff.

47. The meetings that did take place between Donsbach and Plaintiff were not productive and were not primarily related to his work or performance.

48. Plaintiff was actively seeking feedback to improve his work performance and opportunities for promotion.

49. Plaintiff reached out to management to ask for feedback on his performance thus far and what he could to improve and receive a promotion.

50. As a result of his feedback requests, a monthly "development meeting" was scheduled between Plaintiff and Donsbach. The meetings were to begin in January 2025.

51. Donsbach canceled every single one of these meetings, and Plaintiff was never allotted time for feedback on his performance.

52. Donsbach began communicating directly with team members Plaintiff supervised, bypassing Plaintiff entirely, which she had not done prior to his accommodation request.

53. Donsbach began holding meetings with Plaintiff's team members.

54. Plaintiff was not informed of these meetings and was reprimanded for not being aware of the content of those discussions.

55. In or about late September or early October 2024, Plaintiff scheduled a site visit for his team.

56. Donsbach directed Plaintiff to cancel the site visit, which Plaintiff did.

57. On information and belief, Donsbach rescheduled the site visit and invited Plaintiff's entire team while excluding Plaintiff.

58. In late September or early October 2024, a colleague named Patrick McEwan (***"McEwan"***) called Plaintiff after work hours and told him he did not know what Plaintiff's problem was, based on representations Donsbach made to McEwan that Plaintiff had been disparaging McEwan's work.

59. Donsbach's representations about Plaintiff to McEwan were false.

60. At his year-end review for 2024, Plaintiff received marks of "meets expectations" and was granted a raise and a bonus at the highest range of the "meets expectations" allowances.

61. In January 2025, Plaintiff asked about a promotion from the M4 to the M5 pay grade.

62. Donsbach told Plaintiff that the promotion had not been given due to his "thing," referring to Plaintiff's accommodation requests and/or disability.

63. In February 2025, Plaintiff suffered an anxiety attack in Donsbach's office during a meeting.

64. Plaintiff required two mental health days to recover.

65. In or about February 2025, while Plaintiff was present, colleagues on the Facilities Management Team openly mocked and disparaged another employee who had submitted an indoor

air quality complaint and sought an accommodation to work from home, suggesting the complaint must be fabricated.

66. In early March 2025, additional mold was discovered in the Lower Level.

67. On March 24, 2025, Defendant informed Plaintiff that he was being terminated.

68. Defendant's stated reason for termination was unsatisfactory performance.

69. Plaintiff had not been placed on a Performance Improvement Plan prior to termination and had received very minimal negative performance feedback in the months preceding his discharge.

70. Plaintiff was subject to a workplace accommodation at the time of his termination.

**COUNT I: DISABILITY DISCRIMINATION**
**In Violation of the MHRA**

71. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth and restated herein.

72. Plaintiff's medical conditions substantially impacted one or more of Plaintiff's major life activities, including respiratory function, cardiovascular function, thinking, breathing, and working, and these conditions constitute a disability within the meaning of MHRA, R.S.Mo. § 213.010(5).

73. Plaintiff had an actual and/or perceived disability, including but not limited to his allergy to mold and related complications.

74. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

75. Defendant took adverse employment actions against Plaintiff, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, denying Plaintiff promotion, and terminating Plaintiff's employment.

76. Plaintiff's actual and/or perceived disability was a motivating factor in Defendant's adverse employment actions taken against Plaintiff.

77. Defendant took the adverse employment actions against Plaintiff because of Plaintiff's disability, in violation of the MHRA.

78. Defendant also subjected Plaintiff to unwelcome harassment based on Plaintiff's disabled status under the law, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, providing false information about Plaintiff to coworkers, denying Plaintiff promotion, and terminating Plaintiff's employment.

79. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

80. Defendant subjected Plaintiff to a hostile work environment based on Plaintiff's disability.

81. Defendant knew or should have known of the harassment and failed to implement prompt and effective corrective action.

82. Defendant's actions as described herein constitute disability discrimination in violation of the MHRA, R.S.Mo § 213.055.

83. Defendant's conduct was intentional, willful, wanton, and malicious, and showed a reckless disregard for Plaintiff's rights under the MHRA. Defendant's conduct warrants punitive damages.

84. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including lost wages and benefits, emotional distress and mental anguish.

85. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other expenses and losses in connection with this matter.

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff back pay, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre and post-judgment interest, front pay and other appropriate equitable relief, and attorneys' fees and costs, all in an amount over $25,000.00, and for such additional relief as may be just and proper under the circumstances. Plaintiff demands a jury trial on all counts.

**COUNT II: DISABILITY DISCRIMINATION**
**In Violation of the ADA**

86. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth and restated herein.

87. Plaintiff's medical conditions substantially impacted one or more of Plaintiff's major life activities, including respiratory function, cardiovascular function, thinking, breathing, and working, and these conditions constitute a disability within the meaning of ADA.

88. Plaintiff had an actual and/or perceived disability, including but not limited to his allergy to mold and related complications.

89. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

90. Defendant took adverse employment actions against Plaintiff, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, denying Plaintiff promotion, and terminating Plaintiff's employment.

91. Plaintiff's actual and/or perceived disability was a motivating factor in Defendant's adverse employment actions.

92. Defendant took the adverse employment actions against Plaintiff because of Plaintiff's disability, in violation of the ADA.

93. Defendant also subjected Plaintiff to unwelcome harassment based on Plaintiff's disabled status under the law, including but not limited to failing to timely provide reasonable accommodation, excluding Plaintiff from meetings, bypassing Plaintiff in his supervisory role, providing false information about Plaintiff to coworkers, denying Plaintiff promotion, and terminating Plaintiff's employment.

94. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

95. Defendant subjected Plaintiff to a hostile work environment based on Plaintiff's disability.

96. Defendant knew or should have known of the harassment and failed to implement prompt and effective corrective action.

97. Defendant's actions as described herein constitute disability discrimination in violation of the ADA, 42 U.S.C. § 12112.

98. Plaintiff's actual and/or perceived disability was a motivating factor in Defendant's adverse employment actions taken against Plaintiff.

99. Defendant's conduct was intentional, willful, wanton, and malicious, and showed a reckless disregard for Plaintiff's rights under the ADA. Defendant's conduct warrants punitive damages.

100. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including lost wages and benefits, emotional distress and mental anguish.

101. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other expenses and losses in connection with this matter.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff back pay, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre and post-judgment interest, front pay and other appropriate equitable relief, and attorneys' fees and costs, all in an amount over $25,000.00, and for such additional relief as may be just and proper under the circumstances. Plaintiff demands a jury trial on all counts

## COUNT III: RETALIATION
## In Violation of the ADA

102. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth and restated herein.

103. At all relevant times, Plaintiff was a qualified individual able to perform his job responsibilities with or without reasonable accommodation.

104. By requesting accommodation for his disability, Plaintiff engaged in activity protected under the ADA.

105. Defendant subjected Plaintiff to unwelcome harassment because of his protected activity under the ADA.

106. In retaliation for his protected activity, Defendant took actions against Plaintiff, including but not limited to, excluding Plaintiff from meetings, bypassing him in his supervisory role,

providing false information about him to coworkers, denying him a promotion, and terminating his employment.

107. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

108. Defendant knew or should have known of the harassment and failed to implement prompt and effective corrective action.

109. Defendant subjected Plaintiff to a hostile work environment in retaliation for Plaintiff's protected activity, in violation of the ADA, 42 U.S.C. § 12203.

110. Defendant's conduct was intentional, willful, wanton, and malicious, and showed a reckless disregard for Plaintiff's rights under the ADA. Defendant's conduct warrants punitive damages.

111. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer lost wages and benefits, emotional distress, mental anguish, humiliation, and damage to his professional reputation.

112. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including lost wages and benefits, emotional distress and mental anguish.

113. As a direct result of Defendant's conduct, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other expenses and losses in connection with this matter.

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant for back pay, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre and post-judgment interest, front pay and other appropriate equitable relief, attorneys' fees and costs, all in an amount over $25,000.00, and for

such additional relief as may be just and proper under the circumstances. Plaintiff demands a jury trial on all counts.

Respectfully submitted,

*/s/ Meredith S. Berwick*
Meredith S. Berwick, MO #64389
Krystal K. Weigl, MO #69874
WEIGL JACKSON, LLC
10805 Sunset Office Drive Suite 210
St. Louis, MO 63127
Meredith@WeiglLaw.com
Krystal@WeiglLaw.com
(314) 707-4626
*Attorney for Plaintiffs*

# Exhibit 1

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: MCHR + EEOC

Agency(ies) Charge No(s):

MCHR and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev., etc.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Anthony Ligori | 480-294-5480 | 1983 |

Street Address, City State and ZIP Code

4012 Loughborough Ave, Saint Louis, MO 63116

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Federal Reserve Bank of St. Louis | 500+ | (314) 444-8444 |

Street Address, City State and ZIP Code

Broadway and Locust, 1 Federal Reserve Bank Plaza, St. Louis, MO 63102

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address, City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE Earliest | Latest |
|---|---|---|
| Disability and Retaliation | May 30, 2024 | March 24, 2025 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See attached narrative.

STATE OF MISSOURI · My Commission Expires Oct. 3, 2027 · NOTARY SEAL · NOTARY PUBLIC · Commission # 23392018 · OLIVIA WEIGL · ST. LOUIS CITY

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

4-25-25
*Date*

[signature]
*Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

[signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

[signature] 4/25/25

**ANTHONY LIGORI**

**v.**

**FEDERAL RESERVE BANK OF ST. LOUIS**

---

## CHARGE OF DISCRIMINATION BASED ON DISABILITY AND RETALIATION

---

I, Anthony Ligori, am a 42 year-old male. I reside in St. Louis City, Missouri. I contend that my employer, Federal Reserve Bank of St. Louis. ("***Federal Reserve***" or "***Company***"), as well as its agents and employees, discriminated and retaliated against me based on my disability and my request for an accommodation for the same.

I began working for the Federal Reserve as a Manager of the Facility Project Management Team on September 7, 2021. The Company employs over 500 people, with at least 50 employees working in the office. The Company is an "employer" as defined by the Missouri Human Rights Act and the Americans with Disabilities Act (ADA). At all relevant times I reported to my immediate supervisor, Andrea Donsbach ("***Donsbach***"). I was compensated $132,400 a year, plus various bonuses throughout the year and full benefits, including medical insurance, employer retirement plan, company 401(k) contributions and PTO. My main job duties included overseeing the construction project management across all buildings owned by the Federal Reserve Bank of St. Louis. By all accounts, I was a good employee, I even received the high tier salary bonus based on my end of year review for 2024. During my employment, I performed my job to the best of my ability and met the legitimate job expectations of the Company.

Beginning in the summer of 2023, I was subjected to discrimination and a Hostile Work Environment by my coworkers. I was harassed based on my disability. Despite many complaints to superiors, the Company failed to address the issue of discrimination.

In the summer of 2023, my department was relocated from our work area into the basement of our building. I soon began experiencing respiratory impairment, sinus complications, dizziness, lethargy, and chronic headaches, that would constitute a disability or impairment under the ADA. Additionally, during my employment, I began to suffer from panic attacks. (Collectively, "disabilities"). These health issues, my disabilities, were documented by my doctor. Shortly after, mold was discovered throughout the basement.

In April of 2024 I went on paternity leave and consequently was away from the office for a period of six weeks. My symptoms resolved. When I returned to work the symptoms almost immediately returned. On May 30, 2024, I told Donsbach about my symptoms from the mold and requested a seating change out of the basement. This was a reasonable accommodation that would not cause undue hardship to the Company. Donsbach informed me that she would talk to her superiors. Nothing happened until I again asked to move out of the basement. On June 7, 2024 Donbach told me I needed to put in a formal accommodation request to be moved out of

the basement and away from the mold. On June 10, 2024 I put in a formal request to be moved until there was a complete remediation of the mold. Despite my continuous follow-up, company required FMLA Disability Forms were not provided to me until July 8th.

On July 10, 2024 a large water leak was discovered under the raised access flooring in the basement. The floor was covered with fans to "dry up" the water, but ended up making the mold spores become airborne. This caused me to have a severe allergic reaction and triggered my respiratory complications. On July 17, 2024 my doctor sent a letter to the Company suggesting I be moved to a different office space where there was no water leak.

It was not until August that the Company gave me a space that was not in the basement. Shortly after this change in seating arrangement, I was left out of meetings I had previously been a part of. Donsbach canceled several of our 1 on 1 meetings. The meetings that took place were not productive nor primarily related to my work or performance. During one of our meetings I stated that the basement was problematic because of the mold. She told me that she "just takes Zyrtec" for her allergies and that I should try the same. Donsbach started going directly to the team members I managed with questions and concerns instead of going through me - something she had not done before my accommodation request. I had scheduled a site visit for my team and Donsbach told me to cancel it. I later found out that Donsbach had rescheduled the site visit and invited my entire team.

I had co-workers come to me with animosity based on things they had heard from Donsbach. One specific instance involved a colleague named Patrick. One day in late September or early October of 2024, Patrick called me after work hours and stated, "I don't know what your problem is" and went on to explain that Donsbach told Patrick that I was disparaging Patrick's work and "talking trash" about him. The comments Donsbach has circulated about me were false. Patrick's work involved remedying the water leak. The conversation I had with Donsbach, related to Patrick, was one where I told Donsbach that the fan placed downstairs to clear the water was insufficient. Instead of acknowledging or hearing my health and disability related concerns, Donsbach began telling my coworkers that I was disparaging their work.

In October or November of 2024, Donsbach stated that other team members complained that I was allowed to sit on a different floor when they had to remain in the lower level. She said there were a few people that complained and mentioned one coworker, Rebecca Lane, by name.

At my year-end review for 2024 I received all marks of "meets expectations" and I was granted a raise and a bonus at the highest range of meets expectations allowances. I received a handwritten card from Donsbach thanking me "for everything [I] contributed over the past year." Further "[My] hard work and dedication have been truly appreciated". Lastly, "I'm excited about what lies ahead and am grateful to have you on the team as we tackle this year's new opportunities together".

In January of 2025 I asked why I had not been given the promotion from M4 to M5. Donsbach told me that it was due to my "thing" referring to my accommodation and/or disability. When talking about seating availability within the building, due to a possible full return to 5 days per week in the building for all staff, James said people are just going to have to sit in the Lower Level in spite of the water and mold. He looked directly at me when he said it.

In February of 2025, I suffered an anxiety attack in Donbach's office after being scolded by her. I had to take two mental health days to recover and started seeking the help of a counselor. The facilities management team received an indoor air quality (IAQ) complaint from someone sitting on the 5th floor. The facilities management team openly discussed their investigation efforts of the space while I was in the room. The team all agreed that this person must be making this up so they can gain an accommodation to permanently work from home. The comments were disparaging and mocking in nature.

In early March of 2025, more mold was discovered in the basement.

On March 24, 2025, the Company informed me that I was being terminated.

In summary, I was an individual with a disability within the meaning of the ADA, who was subjected to discrimination with respect to the terms, conditions, and/or privileges of my employment because of my disability, record of disability, and/or perceived disability in violation of the ADA. My disability inhibits a major life activity, breathing, and I am a member of the class of people intended to be protected by the ADA. I was qualified to perform the essential functions of the job.

I exercised my rights under the ADA, requested an accommodation, and this was a motivating factor in the Company's decision to terminate my employment. The Federal Reserve Bank of St. Louis' conduct is in violation of the ADA. Requesting an accommodation is a protected activity under the ADA. The Company retaliated against me because I sought to exercise my rights afforded to me under the ADA. The Company's conduct was in violation of the ADA. My protected activity was a motivating factor in the Company's decision to terminate my employment. The Company's conduct was outrageous and showed complete indifference to or conscious disregard for my rights.

As a direct result of the Company's conduct, I have suffered damages, which include loss of wages and benefits, past and present, mental anguish, emotional distress, pain and suffering, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses, all of continuing and permanent nature.

Based upon the details described above, I contend that the Federal Reserve Bank of St. Louis., as well as its agents and employees engaged in acts of discrimination and retaliation under the ADA.

4-25-25

# Exhibit 2

MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS

# MISSOURI COMMISSION ON HUMAN RIGHTS

| MIKE KEHOE<br>GOVERNOR | ANNA S. HUI<br>DEPARTMENT DIRECTOR | CHRISTOPHER SLINKARD<br>COMMISSION CHAIR | SHANNON THOMPSON<br>ACTING EXECUTIVE DIRECTOR |
|---|---|---|---|

June 24, 2026

Anthony Ligori
4012 Loughborough Avenue
St. Louis, MO 63116
Via Complainant Attorney Email: Krystal@weigllaw.com

**NOTICE OF RIGHT TO SUE**

RE: Ligori v. Federal Reserve Bank of St. Louis, FE-04/25-40696; 560-2025-02745

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue from MCHR and/or the Equal Employment Opportunity Commission (EEOC) with whom this matter was dual filed.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri. Any such petition must be filed in the Circuit Court of Cole County.

(CONTINUED ON NEXT PAGE)

RE: Ligori v. Federal Reserve Bank of St. Louis, FE-04/25-40696; 560-2025-02745

Respectfully,

Shannon Thompson

Shannon Thompson
Acting Executive Director

CC:
Federal Reserve Bank of St. Louis
One Federal Reserve Bank Plaza
Broadway and Locust
Saint Louis, MO 63102
*Via Respondent Attorney Email*

Amy Oslica Dougherty
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
Adougherty@thompsoncoburn.com

Krystal K. Weigl
Managing Partner, Weigl Law, LLC
10805 Sunset Office Drive
Suite 210
St. Louis, MO 63127
Krystal@weigllaw.com

# Exhibit 3

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

11/14/2025

Anthony Ligori
4012 Loughborough Ave.
Saint Louis, MO 63116

Re: Anthony Ligori v. FEDERAL RESERVE BANK OF SAINT LOUIS

EEOC Charge Number: 560-2025-02745

FEDERAL RESERVE BANK OF SAINT LOUIS has submitted a Position Statement in response to your EEOC Charge of Discrimination, 560-2025-02745, and it is available in the EEOC Public Portal for your review. Please log-in to the EEOC Public Portal as soon as possible to download and review the Position Statement and any attachments or supplements.

If you would like to respond to the Respondent's Position Statement or provide additional evidence or information to be considered in this investigation, please upload your response/evidence to the EEOC Public Portal by 12/14/2025.

This is your opportunity to provide any additional information you believe is relevant to support your case. There is no specific format required for your response; however, if you disagree with any information the employer provided, please state what you disagree with, explain why you disagree, and provide information supporting your explanation. If there are witnesses that have information about the allegations raised in your charge, be sure to provide their names, contact information, and a summary of what you expect they would say.

If you do not submit additional information by the deadline, EEOC will proceed based on the available evidence. If you do submit additional information by the deadline, EEOC will evaluate the information. EEOC may contact you if additional information is needed for the investigation. If, after reviewing the evidence, it appears that further investigation will not result in the finding of a violation, the EEOC will dismiss the charge and issue you a Determination and Notice of Rights, which gives you 90-days to file a lawsuit if you wish to pursue your claims further. Please note that if your charge alleged one or more allegations under the Equal Pay Act (EPA), you already have the right to sue under the EPA (filing an EEOC charge is not required). EPA lawsuits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.

Please be aware that by receiving these documents before you have filed a lawsuit based upon your charge, you agree that you will only share them with persons in a privileged relationship with you, such as a spouse, clergy, or medical, financial, or legal advisor.

If you have questions, please contact CHAD SUGGS by telephone at (314) 798-1911 or email at CHAD.SUGGS@EEOC.GOV.

Sincerely,

11/14/2025

CHAD SUGGS
EQUAL OPPORTUNITY INVESTIGATOR

Cc.
Krystal Weigl
Weigl Law, LLC
10805 Sunset Office Dr. Suit 210
Saint Louis, MO 63127

**Case Number: 2622-CC13519**

Electronically Filed - CITY OF ST. LOUIS - November 02, 2026 - 10:19 AM

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to:

Sarah Beamer B/F/40's (name) Attorney (title).

☐ other: ______________________.

Served at 1 Federal Reserve bank Plaza (address)

in ______________ (County/City of St. Louis), MO, on 10-30-26 (date)

at 11:29 (time).

J. Harris 1096 — Printed Name of Officer or Server

J. Harris 1096 — Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________ (date).

*(Seal)*

My commission expires: ______________ Date ______________ Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

1382

Electronically Filed - CITY OF ST. LOUIS - November 02, 2026 - 10:19 AM

# Summons in Civil Case

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| ...dge or Division:<br>...HRISTOPHER EDWARD ...MCGRAUGH | **Case Number: 2622-CC13519** | |
| Plaintiff/Petitioner:<br>ANTHONY LIGORI<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MEREDITH SHAFFER BERWICK<br>5017 WASHINGTON PLACE 3RD FL<br>ST LOUIS, MO 63108 | |
| Defendant/Respondent:<br>FEDERAL RESERVE BANK OF ST. LOUIS | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | | |

**The State of Missouri to:** **FEDERAL RESERVE BANK OF ST. LOUIS**
**Alias:**
**1 FEDERAL RESERVE BANK PLAZA**
**ST. LOUIS, MO 63102**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

CIRCUIT COURT OF MISSOURI

***CITY OF ST LOUIS***

10/22/2026
Date

Thomas Kloeppinger
Clerk

**Further Information:**

OCT 28 AM10

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-17624**
1 of 2 (2622-CC13519)

Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo